UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SHARON VAN ASSCHE,

       Plaintiff,                        CIVIL ACTION NO. 09-14812

       v.                                 DISTRICT JUDGE AVERN COHN

COMMISSIONER OF                 MAGISTRATE JUDGE MARK RANDON
SOCIAL SECURITY,

       Defendant.
_____/

**REPORT AND RECOMMENDATION**
**ON CROSS-MOTIONS FOR SUMMARY JUDGMENT**

**I.    PROCEDURAL HISTORY**

    *A.    Proceedings in this Court*

On December 11, 2009, Plaintiff filed the instant suit seeking judicial review of the Commissioner's decision disallowing benefits (Dkt. No. 1). Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), this matter was referred to the undersigned for the purpose of reviewing the Commissioner's decision denying Plaintiff's claim for a period of Supplemental Security Income benefits (Dkt. No. 3). This matter is currently before the Court on cross-motions for summary judgment (Dkt. Nos. 16, 19).

    *B.    Administrative Proceedings*

Plaintiff filed the instant claims on March 20, 2006, alleging that she became unable to work on January 1, 2005 (Tr. 10, 73-75). The claim was initially disapproved by the Commissioner on June 20, 2006 (Tr. 66-69). Plaintiff requested a hearing and, on July 23, 2008, Plaintiff appeared with counsel before Administrative Law Judge (ALJ) Anthony B. Roshak, who considered the case

*de novo*. In a decision dated January 9, 2009, the ALJ found that Plaintiff was not disabled (Tr. 7-21). Plaintiff requested a review of this decision on March 12, 2009 (Tr. 6). The ALJ's decision became the final decision of the Commissioner when the Appeals Council, on October 9, 2009, denied Plaintiff's request for review (Tr. 1-5).

In light of the entire record in this case, I find that substantial evidence supports the Commissioner's determination that Plaintiff is not disabled. Accordingly, it is **RECOMMENDED** that Plaintiff's motion for summary judgment be **DENIED**, Defendant's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

**II.     STATEMENT OF FACTS**

   *A.     ALJ Findings*

Plaintiff was 41 years old at the time of the most recent administrative hearing (Tr. 19). Plaintiff's relevant work history included past work as a part-time receptionist, home health care provider and cleaning person (Tr. 19). The ALJ applied the five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff had not engaged in substantial gainful activity since March 20, 2006 (Tr. 12). At step two, the ALJ found that Plaintiff had the following "severe" impairments: obesity, degenerative disc disease, bilateral carpal tunnel syndrome, diabetes mellitus, hypertension, depression and anxiety. *Id*. At step three, the ALJ found no evidence that Plaintiff's combination of impairments met or equaled one of the listings in the regulations. *Id*. Between steps three and four, the ALJ found that Plaintiff had the Residual Functional Capacity (RFC) to perform "the full range of sedentary work" (Tr. 14). At step four, the ALJ found that Plaintiff could not perform most of her past relevant work (Tr. 19). At step five, the ALJ denied Plaintiff benefits, because the ALJ found that Plaintiff could perform a significant number of jobs available in the national economy, such as: information clerk (1,800 jobs available in the regional economy), identification clerk (1,700

jobs), video surveillance monitor (2,000 jobs) or sorter (2,300 jobs). The ALJ also found that Plaintiff would be able to perform her past work as a part-time receptionist, which is considered sedentary unskilled work as generally performed (Tr. 20).

    *B.*    *Administrative Record*

        1.    **Plaintiff's Testimony and Statements**

Plaintiff described a typical day as consisting of taking her daughters to school, making her bed, reading or watching TV, doing a load of laundry, picking her daughters up, helping clean the kitchen, showering, and watching TV until she went to bed (Tr. 90). She stated that when she cleaned, she did so with the help of her children and it took most of the day (Tr. 92). She shopped once or twice a week for 60 to 90 minutes (Tr. 93). Plaintiff testified during the hearing that she is able to climb a flight of stairs to get to her apartment (Tr. 51). Plaintiff further testified that she is able to stand for "maybe a half hour" and that she is able to take care of her personal needs, such as bathing and dressing. *Id.*

        2.    **Medical Evidence**

A 2005 electromyography (EMG) test of Plaintiff's left hand showed mild to moderate left carpal tunnel syndrome (Tr. 155). X-rays from April 2006 showed a normal-appearing cervical (neck) spine and severe disc space narrowing of the lumbar (lower) spine at L2-L3 (Tr. 136-37). In May 2006, Plaintiff saw family medicine doctor Ellen Coccitti, who had been her primary care doctor for several years.

Neurological evaluation showed intact cranial nerves and reflexes with no focal deficits (Tr. 132). Musculoskeletal examination was mostly normal (Tr. 133). Dr. Coccitti ordered an MRI of Plaintiff's spine and physical therapy (Tr. 133).

In June 2006, Plaintiff was evaluated by Dr. R. Patel at the state agency's request. Plaintiff's chief complaint was diabetes (Tr. 212). On further questioning, Plaintiff stated that she experienced low back pain going up to the neck (Tr. 212). Her functional capacity in walking was 2-3 miles (Tr. 212). Plaintiff's extremities were normal, with 2+ pedal pulses and no atrophy (Tr. 213). Plaintiff could get to the examination table without assistance and did not have spasm, wasting, or deformity of the muscles (Tr. 214). Straight leg raise tests and Patrick's tests were negative bilaterally (Tr. 214). Plaintiff could walk well on heels and toes, as well as squat and rise from a squatting position (Tr. 214). Plaintiff's handgrip and pinch strength were normal, and her gross and fine dexterity was intact in both hands (Tr. 214). Both hips were unremarkable (Tr. 214). Neurological examination revealed intact cranial nerves, intact sensation, full motor power in all extremities, good muscle tone, normal deep tendon reflexes, intact cerebellar functioning, and steady gait (Tr. 214). Her range of motion was full throughout (Tr. 215-16). All reflexes were normal (Tr. 217). Dr. Patel gave Plaintiff an "excellent" prognosis with weight loss and medication, diagnosing morbid obesity, well-controlled diabetes, well-controlled hypertension, high cholesterol, a report of lower back pain without clinical signs, a report of hand grip problems without clinical signs, and a report of hip pain without clinical signs (Tr. 214). Dr. Patel concluded Plaintiff had no physical or mental limitations (Tr. 218).

In January 2007, Plaintiff was diagnosed with sleep apnea and given a CPAP machine (Tr. 248). A June 2007 breathing test was normal with one figure low (Tr. 237). Also in June, Dr. Coccitti prescribed Darvocet for pain (Tr. 234). She noted lordosis (a curvature of the spine), but the musculoskeletal section of the exam shows no other abnormalities (Tr. 233). In September 2008, Dr. Coccitti found cranial nerves, deep tendon reflexes, Romberg's testing, and focal deficit testing all negative (Tr. 228). A March 2008 EMG exam showed severe carpal tunnel syndrome and a left

L5-S1 radiculopathy (Tr. 222). The test results showed abnormal results in two muscles, with the magnitude of abnormal results being small (1+) (Tr. 222). Much of Dr. Coccitti's care of Plaintiff was spent on general internal medicine issues, such as dealing with Plaintiff's high blood pressure and high cholesterol (Tr. 300), female health issues (Tr. 266-67), and consideration of whether to pursue weight-loss surgery (Tr. 249).

Dr. Coccitti filled out a questionnaire in July 2008 in which she stated that Plaintiff had low back pain and hand pain with various signs and symptoms (Tr. 328). Plaintiff also had chronic headaches (Tr. 329). Dr. Coccitti wrote that Plaintiff could not sit for more than 20 minutes at a time or stand for 5 minutes; she could stand/walk fewer than 2 hours a day and could sit for about 2 hours (Tr. 330-331). Dr. Coccitti stated that Plaintiff would "very often" take unscheduled breaks to lie down, and could occasionally lift fewer than 10 pounds (Tr. 331). Lifting of 10 pounds was rated as rarely to occasionally (Tr. 331). Plaintiff was limited in head and neck movements and postural activities (Tr. 331-32). Plaintiff could only use her hands, fingers, and arms 10% each during a work day on specified tasks (Tr. 332). Finally, she would miss more than 4 days a month of work (Tr. 332).

      **3.**    **Vocational Expert**

During the hearing, the ALJ asked a vocational expert what work Plaintiff could do if Plaintiff's claimed exertional limitations were fully credited (Tr. 61-62). The vocational expert stated that Plaintiff could do her past work as a part-time secretary, or work as a video surveillance monitor (2,000 jobs in greater Detroit), information or ID clerk (3,500 jobs) or sorter (2,300 jobs) (Tr. 62). The vocational expert further testified that if Plaintiff's claimed non-exertional limitations were fully credited, then Plaintiff would be precluded from all work. Specifically, the vocational

expert testified that Plaintiff would not be able to maintain work due to her fatigue, concentration problems, limited use of her hand and her need to nap throughout the day (Tr. 62).

### C. Plaintiff's Claims of Error

Plaintiff raises three arguments on appeal, namely: (1) that the ALJ improperly rejected the opinion of Plaintiff's treating physician – Dr. Coccitti – and/or did not give "good reasons" for discounting Dr. Coccitti's opinion; (2) that the ALJ erred in not seeking additional evidence or clarification from Plaintiff's care providers, in particular Dr. Coccitti; and (3) that the ALJ failed to properly account for the side-effect of Plaintiff's medication and postural limitations.

### III. DISCUSSION

#### A. Standard of Review

In enacting the Social Security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious. *See Sullivan v. Zebley*, 493 U.S. 521 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *See Bowen v. Yuckert*, 482 U.S. 137 (1987). If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005);

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may...consider the credibility of a claimant when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility.") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting, Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the

Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record only. *See Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *See Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed.Appx. 521, 526 (6th Cir. 2006).

### B.    *Governing Law*

The "[c]laimant bears the burden of proving her entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord, Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed.Appx. 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program ("DIB") of Title II (42 U.S.C. §§ 401 *et seq*.) and the Supplemental Security Income Program ("SSI") of Title XVI (42 U.S.C. §§ 1381 *et seq*.). Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty-stricken adults and children who become disabled. F. Bloch, *Federal Disability Law and Practice* § 1.1 (1984). While the two programs have

different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'"

*Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also*, 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments, that "significantly limits...physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing, 20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work." *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540. If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

### C. *Analysis and Conclusions*

Plaintiff's main argument on appeal is that the ALJ was required to fully credit the opinion of her primary care physician, Dr. Coccitti. Defendant responds that the ALJ articulated a number of good reasons for not accepting some of Dr. Coccitti's conclusions. Defendant is correct.

The issue of whether Plaintiff is disabled within the meaning of the Social Security Act is reserved to the Commissioner. *See* 20 C.F.R. § 404.1527(e); *see also Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004); *see also Gaskin v. Comm'r of Soc. Sec.*, 280 F. App'x 472, 474 (6th Cir. 2008). "Generally, the opinions of treating physicians are given substantial, if not controlling deference." *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004). A treating physician's opinion is not entitled to controlling weight where it is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2); *see Cox v. Comm'r of Soc. Sec.*, 295 F. App'x 27, 35 (6th Cir. 2008) ("This court generally defers to an ALJ's decision to give more weight to the opinion of one physician than another, where, as here, the ALJ's opinion is supported by evidence that the rejected opinion is inconsistent with the other medical evidence in

the record."). The ALJ "is not bound by conclusory statements of doctors, particularly where they are unsupported by detailed objective criteria and documentation." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001); *see also Kidd v. Comm'r of Soc. Sec.*, 283 F. App'x 336, 340 (6th Cir. 2008). An opinion that is based on Plaintiff's reporting of her symptoms is not entitled to controlling weight. *See Young v. Secretary of Health & Human Servs.*, 925 F.2d 146, 151 (6th Cir. 1990); *see also Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876-77 (6th Cir. 2007). Here, the ALJ had ample reasons for discounting the opinion of Dr. Coccitti.

First, Dr. Coccitti's extreme conclusions are at odds with the conclusions of Drs. Patel and Policherla. To be sure, Dr. Coccitti had more recent information available than the two other doctors. But Dr. Coccitti also indicated that Plaintiff's condition was "stable" rather than "progressive," (Tr. 328), thus it would follow that the limitations Dr. Coccitti imposed would be consistent with those indicated earlier by the other two doctors. Yet they are not. It is noteworthy that Plaintiff does not identify any evidence in Dr. Coccitti's treatment notes that documents a worsening of her condition, after Drs. Patel and Policherla last examined her.

Second, the ALJ correctly observed that Dr. Coccitti's limitations are simply not supported by her own treatment notes (Tr. 18). Although there were a few abnormalities in the musculoskeletal exams, in general no problems are documented. Rather, the diagnosis list usually contained a generic descriptor of "low back pain" (*e.g.*, Tr. 240). Although Dr. Coccitti checked off certain signs and symptoms on a form, she provided only sparse detail (Tr. 328). Because Dr. Coccitti did not document many objective signs in her records, it is difficult to determine the nature, severity, or persistence of the listed signs and symptoms. Furthermore, Dr. Coccitti's finding of some tenderness, weakness, reflex abnormalities is not inconsistent with a restriction to sedentary work; Dr. Coccitti does not explain why these findings prevent Plaintiff from performing all work activity.

Third, while Dr. Coccitti indicated that Plaintiff had significant limitations in the range of motion in her cervical spine (Tr. 328), the only X-ray of the cervical (neck) spine in the record (done in April 2006) was "normal-appearing" (Tr. 136). Plaintiff does not point to significant treatment for neck problems. And, although the form filled out by Dr. Coccitti includes a section on headaches, there is sparse evidence of evaluation or treatment of headaches in the record. It was reasonable, therefore, for the ALJ to conclude that these headaches were not disabling.

Furthermore, the ALJ also properly did not credit Dr. Coccitti's extreme restrictions on Plaintiff's ability to sit and stand. Dr. Coccitti claimed that Plaintiff could stand for only five minutes at a time (Tr. 330), while Plaintiff testified she could stand for half an hour (Tr. 51), and her reported activities included shopping for 90 minutes at a stretch (Tr. 93). Plaintiff also admitted doing laundry and housework, albeit with her children's assistance (Tr. 92). The ALJ reasonably determined that these activities were not consistent with the severe degree of limitation espoused by Dr. Coccitti (Tr. 18). As for Plaintiff's limitations on the use of her upper extremities, Dr. Coccitti's statements are again inconsistent with Plaintiff's daily activities. An individual who could only use her hands or arms 10% of the time would not be able to perform the range of activities Plaintiff stated she engaged in, including driving, some laundry and cleaning.

The ALJ was also not required to accept Dr. Cocciti's statements about Plaintiff's inability to concentrate or her need to take unscheduled breaks, lie down, or miss work frequently. As discussed above, Dr. Coccitti's notes and the rest of the record simply do not indicate that Plaintiff's physical or mental impairments are of disabling severity. Plaintiff stated that her medications made her sleepy, but she took her antispasmodic at night (Tr. 60) and apparently her Xanax as well (Tr. 242). The ALJ was not required to accept Plaintiff's subjective testimony that she was "tired usually throughout the whole day," (Tr. 60), particularly in light of his finding that Plaintiff's demeanor

while testifying cut against her credibility. It is well established that this Court does not make its own credibility determinations. *See Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997); *see also Lawson v. Comm'r of Soc. Sec.*, 192 F. App'x 521, 528 (6th Cir. 2006). The Court cannot substitute its own credibility determination for the ALJ's. The Court's "review of a decision of the Commissioner of Social Security, made through an administrative law judge, is extremely circumscribed ...." *Kuhn v. Comm'r of Soc. Sec.*, 124 F. App'x 943, 945 (6th Cir. 2005). "Claimants challenging the ALJ's credibility determination face an uphill battle." *Daniels v. Comm'r of Soc. Sec.*, 152 F. App'x 485, 488 (6th Cir. 2005). "Upon review, [the court must] accord to the ALJ's determinations of credibility great weight and deference particularly since the ALJ has the opportunity, which [the court] d[oes] not, of observing a witness's demeanor while testifying." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003); *see also Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007). The undersigned finds no basis to disturb the ALJ's credibility determinations on appeal.

Plaintiff also objects to the hypothetical question posed by the ALJ to the vocational expert. The thrust of this argument appears to be that the ALJ did not include non-exertional limitations identified by Dr. Coccitti, and is basically a restatement of Plaintiff's first argument on appeal – *i.e.* that the ALJ improperly discounted Dr. Coccitti's opinion. Plaintiff also states that "it appears the Vocational Expert made a decision as to the appropriate residual functional capacity from her observation of [Plaintiff]." Pl. Br. 8. However, the ALJ instructed the vocational expert to accept Plaintiff's testimony as to her exertional limitations – that is, Plaintiff's claimed limitations in sitting, standing, walking and lifting (Tr. 61-62). Plaintiff testified that she could sit and stand for a half hour at a time, and could walk from the parking lot to the hearing office (Tr. 51). She further testified she could lift a gallon of milk (Tr. 52). So the ALJ's instructions necessarily informed the

vocational expert that Plaintiff could only do sedentary jobs (because of the lifting restriction) and jobs with a sit/stand option. The vocational expert then properly identified sedentary work with a sit/stand option (Tr. 62).

Finally, Plaintiff argues that the ALJ should have re-contacted Dr. Coccitti. *See* Pl. Br. 7. But "an ALJ is required to re-contact a treating physician only when the information received is inadequate to reach a determination on claimant's disability status, not where, as here, the ALJ rejects the limitations recommended by that physician." *Poe v. Comm'r of Soc. Sec.*, 2009 WL 2514058 at *7 n.3 (6th Cir. Aug. 18, 2009) (citing 20 C.F.R. §§ 404.1512(e), 416.912(e)). As noted above, the ALJ properly rejected Dr. Coccitti's opinion because it was not consistent with her own treatment notes or the record as a whole.

In sum, after review of the record, I conclude that the decision of the ALJ, which ultimately became the final decision of the Commissioner, is within that "zone of choice within which decisionmakers may go either way without interference from the courts," *Felisky*, 35 F.3d at 1035, as the decision is supported by substantial evidence.

## III.   RECOMMENDATION

Based on the foregoing, it is **RECOMMENDED** that Plaintiff's motion for summary judgment be **DENIED**, that Defendant's motion for summary judgment be **GRANTED** and that the findings and conclusions of the Commissioner be **AFFIRMED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).

The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court. The response shall address each issue contained within the objections specifically and in the same order raised.

s/Mark A. Randon
MARK A. RANDON
UNITED STATES MAGISTRATE JUDGE

Dated: February 1, 2011

*Certificate of Service*

*I hereby certify that a copy of the foregoing document was served on the parties of record on this date, February 1, 2011, by electronic and/or first class U.S. mail.*

*s/Melody R. Miles*
*Case Manager to Magistrate Judge Mark A. Randon*
*(313- 234-5542*